IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Muzammil Ali, ) | C/A No.: 1:24-4059-JFA-SVH |
| ) | |
|                Petitioner, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| Warden of FCI Bennettsville, ) | |
| ) | |
|                Respondent. ) | |
| ) | |

Muzammil Ali ("Petitioner"), Federal Register Number 19513-030, is a federal inmate who was housed by the Bureau of Prisons ("BOP") at the Federal Correctional Institution ("FCI") Bennettsville.[1] Proceeding pro se, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion to dismiss or, in the alternative, motion for summary judgment. [ECF No. 13]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the motion to dismiss and summary judgment, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's motion. [ECF No. 14]. The motion having been fully briefed [ECF Nos. 16, 17], it is ripe for disposition.

---

[1] Petitioner was previously designated by the BOP to the FCI in Pollock, Louisiana ("FCI Pollock") from July 19, 2021, through March 1, 2024. [*See*

1

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends Respondent's motion be granted.

I.   Factual and Procedural Background

On October 11, 2023, an FCI Pollock staff member wrote Petitioner an incident report for violating Prohibited Act Code 108, Possessing a Hazardous Tool. [ECF No. 13-1 at 4–6 (incident report)]. The reporting officer included the following description of the incident:

> On October 11, 2023[,] at approximately 0540 hours, while preforming a target search of Delta 3 Cell 118 that housed inmates Ali, Muzammil Reg. No. 19513-030 and [inmate X][2] a black Motorola cellular device and a black cellphone charging black with cable was found in the possession of inmate Ali. Specifically[,] the cellular device was located on his person plugged into the charging cable in the middle bunk of cell 118 as he was sleeping. Inmate Ali was asked to step out of the bed[,] and he placed the phone on his mattress. The IMEI number for the cellular device could not be located without the destruction of the device. Inmates Ali and [X] were verified via TruScope and Bedbook cards.

*Id.* at 4 (errors in original).

On the same day, a Lieutenant tasked with investigating the incident report advised Petitioner of his rights and afforded him an opportunity to make a statement. *Id.* at 6. Petitioner declined to make a statement. *Id.* The Lieutenant subsequently completed his investigation and determined that

---

ECF No. 1 at 2, ECF No. 13-1 ¶ 4].
[2] Respondent informs the court that the names and identifying information of other inmates has been redacted for privacy and security reasons. [*See* ECF

Petitioner was properly charged. *Id.* Petitioner received a copy of the incident report on October 11, 2023, at approximately 0750 hours. *Id.*

A unit discipline committee ("UDC") hearing was held on October 12, 2023. *Id.* at 5, 13 (inmate rights at discipline hearing). During the UDC hearing, Petitioner did not make a statement to the Committee despite being afforded an opportunity to do so. *Id.* at 5. The UDC subsequently referred the charge to the discipline hearing officer ("DHO") for further processing. *Id.*

On the same day, a Lieutenant provided Petitioner with a Form BP-A0294, Notice of Discipline Hearing Before the DHO. *Id.* at 11. Petitioner signed the Form BP-A0294 on the same day, indicating that he did not wish to have a staff representative at the DHO hearing. *Id.* On the Form BP-A0294, Petitioner also indicated that he did not wish to call any witnesses on his behalf at the DHO hearing. *Id.* In addition, on October 12, 2023, the Lieutenant also provided Petitioner a Form BP-A0293, Inmate Rights at Discipline Hearing, which advised him of his rights at the DHO hearing. *Id.* at 13. Petitioner signed and dated the Form BP-A0293 on the same day. *Id.*

On October 20, 2023, a DHO hearing was held at USP Pollock. *Id.* at 15–18. At the DHO hearing, DHO English read and reviewed Petitioner's due process rights with Petitioner. *Id.* Petitioner subsequently stated that he understood his rights and had no documentary evidence to present. *Id.* In

No. 13 at 12 n.7].

addition, Petitioner did not request any witnesses and declined the services of a staff representative to assist him at the DHO hearing. *Id.* Petitioner nevertheless indicated to the DHO that he was ready to proceed with the DHO hearing. *Id.*

During the DHO hearing, Petitioner denied being in possession of a cell phone, and stated, "I am on the lower bunk. I never set the phone on the bed." *Id.* In addition to the incident report and investigation, the DHO considered the written account of the reporting staff and the submitted evidence. *Id.* The DHO found Petitioner committed the prohibited act as charged. *Id.*

In the DHO report, the DHO set out the specific evidence relied upon as well as the rationale for the finding. *Id.* The DHO sanctioned Petitioner to the disallowance[3] of 41 days of good conduct time, forfeiture of 20 days of non-vested good conduct time, 90 days' loss of commissary privileges, and a fine of $100. *Id.*

---

[3] "There is a distinction between the 'disallowance' of GCT and the 'forfeiture' thereof." *Feather-Gorbey v. Warden, USP Thomson*, C/A No. 5:22-00007, 2023 WL 5312217, at *3 (S.D.W. Va. Aug. 17, 2023). "Disallowance means the withholding of GCT for the year in which the offense occurs." *Id.* (citing *Hurst v. Bledsoe*, C/A No. 3:10-1868, 2011 WL 320576, *5 (M.D. Pa. Jan. 28, 2011) (distinguishing between disallowance and forfeiture of GCT)). "Forfeiture . . . involves taking back GCT which Petitioner has previously earned, which was not subject to disallowance." *Id.* (citing *Hurst*, 2011 WL 320576, *5).

In the DHO Report, the DHO explained the reason for the sanctions imposed on Petitioner, stating in pertinent part as follows:

> The sanction against Good Conduct Time was used to comply with the mandatory sanctioning guidelines for inmates sentenced under the Prison Litigation Reform Act (PLRA). The sanction against Non-Vested Good Conduct Time was used to demonstrate the seriousness of this infraction and to let the inmate know that infractions of this nature will prolong his term of incarceration. Loss of privileges was imposed to correct the present inappropriate behavior and deter the inmate and others from future behavior of this type. The sanction imposed involving a monetary fine was taken to enforce the standard of inmates being held responsible for their own actions and to deter the inmate and others from future behavior of this type.

*Id.* The DHO report was completed on November 1, 2023, and a copy was provided to Petitioner by a staff member on November 7, 2023, at approximately 1100 hours. *Id.* The inmate was also apprised of his right to appeal the action through the BOP's Administrative Remedy Procedure. *Id.*

II.    Discussion

    A.    Habeas Corpus Standard of Review

"[I]t is well established that defendants convicted in federal court are obliged to seek habeas relief from their convictions and sentences through § 2255." *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (citing *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997)). In contrast, a motion filed under § 2241 is typically used to challenge the manner in which a sentence is executed. *See In re Vial*, 115 F.3d at 1194 n.5.

Under established local procedure in this judicial district, a careful review has been made of this petition pursuant to the Rules Governing Section 2254 Proceedings for the United States District Court,[4] the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, and other habeas corpus statutes. Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

---

[4] The Rules Governing Section 2254 are applicable to habeas actions brought under § 2241. See Rule 1(b).

B.     Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56.

C.   Analysis

Petitioner challenges the disciplinary proceedings that resulted in the loss of good conduct time. [ECF No. 1]. Certain procedural safeguards apply when loss of statutory good time credit is at issue. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In *Wolff*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

*Id.* at 563–72.

Additionally, DHO findings revoking a prisoner's good time credit must be supported by "some evidence in the record." *Superintendent, Mass. Corr.*

8

*Inst. v. Hill*, 472 U.S. 445, 454–56 (1985). The *Hill* Court declined to adopt a more-stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id.* at 455–56; *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990) ("Nor does [requiring some evidentiary basis to revoke good time credits] imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review."). This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the *Hill* Court noted:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455–56.

A review of the record reveals that Petitioner was provided with the procedural safeguards outlined in *Wolff*. First, Petitioner received written

notice of the charge at least twenty-four hours in advance of the DHO hearing. That incident report informed Petitioner of the charge against him. A DHO hearing was held on October 20, 2023, nine days after Petitioner was first informed of the charge against him. Because Petitioner received written notice of the charge against him more than twenty-four hours in advance of the DHO hearing, the first procedural due process requirement under *Wolff* has been met.

Second, the evidence against Petitioner was disclosed to him well in advance of the DHO hearing. Documented in the DHO report is the specific evidence relied upon by the DHO in reaching a decision. Here, the written account of the reporting staff member and all other evidence against Petitioner was contained in the incident report, which was provided to Petitioner on October 11, 2023, nine days prior to the DHO hearing. As such, the second requirement under *Wolff* is satisfied.

Third, Petitioner was afforded the right to call witnesses and present documentary evidence at the DHO hearing on October 20, 2023. On October 12, 2023, Petitioner was provided a Form BP-A0294, Notice of Discipline Hearing Before the DHO. Petitioner signed the Form BP-A0294 on the same day and indicated that he did not wish to call any witnesses. In addition, on October 12, 2023, Petitioner was also provided a Form BP-A0293, Inmate Rights at Discipline Hearing, which advised him of his rights at the DHO

10

hearing. The Form BP-A0293 informed Petitioner of his right to call witnesses and present documentary evidence at the DHO hearing. Furthermore, the DHO report reflects that the DHO afforded Petitioner an opportunity to call witnesses and present documentary evidence at the DHO hearing, but he declined. Accordingly, the third requirement under *Wolff* has been met.

Fourth, Petitioner had a neutral and detached hearing provided by the DHO on October 20, 2023, as evidenced by the DHO report. Lastly, Petitioner received a written statement by the DHO as to the evidence relied upon and the reasons for the disciplinary action. An FCC Pollock staff member gave Petitioner a copy of the DHO report on November 7, 2023. Accordingly, the fourth and fifth requirements under *Wolff* has been met.

Additionally, the evidence in Petitioner's prison discipline proceedings was sufficient to support the DHO's finding that the prohibited act was committed as charged. In Section V of the DHO report, the DHO stated, in pertinent part, that "[t]he decision to find inmate Ali guilty was based on the written account of the reporting staff member and the evidence presented." [ECF No. 13-1 at 17]. The DHO noted that the reporting staff member personally observed Petitioner asleep in the middle bunk with the phone in his possession. *Id.* The statement from the reporting staff member constitutes direct evidence that Petitioner was in possession of a cell phone during the

11

incident in question. Additionally, this statement from the reporting staff member is further supported by the accompanying photo sheet and chain of custody form for the phone, which were also considered by the DHO as part of the evidence. *See id.* at 7–9.

In his petition, Petitioner challenges the punishment he received [ECF No. 1 at 6], also arguing that he was not assigned the bunk where the cellular device was found, another inmate was assigned to that bunk, and only he was written up for the incident. [ECF No. 1 at 6–7, *see also* ECF No. 16 at 2]. Petitioner claims this indicates the reporting officer was biased. *See id.*

Petitioner does not offer evidence in support of his position that another inmate was assigned to the relevant bunk, and the undersigned notes that the DHO report states as follows:

> During the DHO hearing you denied possession of a cell phone stating that you were in the lower bunk and that you never set the phone on the bed. The fact that you were assigned to the lower bunk in the cell is not evidence that you were not sleeping in the middle bunk since it was not assigned to another inmate. You were observed asleep in the middle bunk with the phone in your possession at the time of the incident. The DHO did ask where the phone came from if it was not yours and you replied that you are on the lower bunk. The DHO did explain that you were not being charged with ownership of the cell phone but with possession of the cell phone. There is no evidence on who owns the cell phone; however, the charge is possession of the cell phone, and it was found in your possession.

[ECF No. 13-1 at 17].

Additionally, the undersigned finds Petitioner has failed to produce any evidence that the DHO was not impartial in deciding his case. Rather, the record establishes the DHO conducted a hearing and examined the record. The DHO made a determination as to the credibility of Petitioner and the staff, which he was entitled to make. *See id.* ("The decision to find inmate Ali guilty was based on the written account of the reporting staff member and the evidence presented. The DHO gives greater weight to the evidence rather than inmate Ali's simple denial.").[5]

In *Vilarchao v. Joyner*, C/A No. 5:18-01291-MGL-KDW, 2018 WL 7107930 (D.S.C. Nov. 20, 2018), this court stated:

> An inmate has a right to an impartial decision-maker in disciplinary proceedings. *Wolff*, 418 U.S. at 571. "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Id.* at 592 (Marshall, J., concurring). "While a 'fair trial in a fair tribunal is a basic requirement of due process,' not all claims of bias rise to a constitutional level." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "In order to prevail in a deprivation of due process claim,

---

[5] As noted above, Petitioner contests the DHO's imposed sanction of disallowance of 41 days of good conduct time, forfeiture of 20 days of non vested good conduct time, and the monetary fine of $100. [ECF No. 1 at 6]. Petitioner asserts the sanctions "place[ ] a hardship and financial burden." *Id.* Petitioner fails to explain the nature of the hardship or the financial burden he is asserting. *Id.* Moreover, at no point does Petitioner assert that the DHO exceeded the scope of his authority under the Code of Federal Regulations or BOP policy regarding the sanctions that were imposed. *Id.* As argued by Respondent, and not contested by Petitioner, the sanctions were permissible under 28 C.F.R. § 541.3 and 28 C.F.R. § 541.4. [*See* ECF No. 13 at 21–23].

13

> a defendant must show a level of bias that made 'fair judgment impossible.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "[B]ecause honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998)).

*Id.* at *8.

Petitioner's unsubstantiated assertions of bias by the "reporting officer," even if viewed in a light most favorable to Petitioner, are insufficient to establish that he was not afforded a neutral and detached hearing body as required by *Wolff*.

To the extent Petitioner alleges he is entitled to relief based on a claim of actual innocence, a claim of actual innocence is generally not a basis for federal habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "The due process clause does not require later consideration of evidence that could have been but was not presented during a prison disciplinary proceeding." *Jones v. McCaughtry*, 6 Fed. Appx. 371, 372–73 (7th Cir. 2001). Instead, courts look only to whether a prisoner received the procedural protections due under the Constitution and "subsequent tender of additional evidence is irrelevant to [the] due process determination." *Id.* at 373. As Petitioner was provided with the procedural safeguards outlined in *Wolff*, his petition should be dismissed.

In sum, the undersigned finds Petitioner was afforded all due process required under *Wolff* and that there is some evidence in the record to support the DHO's decision that Petitioner committed the infraction in question. Accordingly, the undersigned recommends the district judge grant Respondent's motion.[6]

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Respondent's motion. [ECF No. 13].

IT IS SO RECOMMENDED.

November 20, 2024                                Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[6] In briefing, and for the first time, Petitioner argues without supporting evidence that he does not recall signing the Notice of Discipline Hearing before the DHO form, and therefore, those documents must have been falsified. [*See* ECF No. 16 at 2–3]. As stated, Petitioner has failed to provide any evidence to support his claim that he was not provided the notices included in the Form BP-A0294, Notice of Discipline Hearing Before the DHO, and Form BP A0293, Inmate Rights at Discipline Hearing. Additionally, although Petitioner claims he did not sign the forms, he does not allege these rights were violated. *See id.*

15

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).